## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEZONIQUE KOWELL
DENISE HOLLINGS,

          *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant*.

_____/

CASE NO. 2:17-cv-13176

DISTRICT JUDGE VICTORIA A. ROBERTS

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 18)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Dezonique Kowell Denise Hollings's claim for Supplemental Security

Income benefits ("SSI"). (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 18).

On July 17, 2014, Plaintiff filed the instant application for SSI, alleging a disability onset date of March 1, 2013. (Doc 11 at PageID.225-230). The Commissioner denied her claim. (*Id.* at PageID.102-110). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on May 4, 2016 before ALJ Lauren G. Burstein. (*Id.* at PageID.79-100). The ALJ issued a decision on May 27, 2016, finding Plaintiff not disabled. (*Id.* at PageID.41-54). On August 3, 2017, the Appeals Council denied review, (*Id.* at PageID.30-35), and Plaintiff filed for judicial review of that final decision on September 29, 2017. (Doc. 1).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See*

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Doc. 11 at PageID.41-54). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 2014, approximately nine months after her alleged onset date of March 1, 2014. (*Id.* at PageID.43-44). At Step Two, the ALJ concluded that the following impairments qualified as severe: bipolar disorder and learning disability/intellectual disability. (*Id.* at PageID.44). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (*Id.*). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations

> the claimant is limited to simple, routine, repetitive work not at a production rate pace, and no tandem tasks, and occasional, superficial contact with supervisors, coworkers, and the public; only work that requires simple reading and writing; a low-stress job meaning only simple, work-related decisions and little to no change in the work setting.

(*Id.* at PageID.47). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (*Id.* at PageID.52). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at PageID.53-54).

      **E.**    **Administrative Record**

      **1.**    **Medical Evidence**

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

      **2.**    **Administrative Hearing**

      **i.**    **Function Report**

Plaintiff filled out a Function Report on August 4, 2014. (Doc. 11 at PageID.246-253). Asked how her condition limited her ability to "work 1st," she claimed she did not know "hot to fill out a job application and will not [know] how to do the work." (*Id.* at PageID.246). Each day she woke up and went to work, then came home to watch television with her two children. (*Id.* at PageID.247). Her mother watched the children while she was away. (*Id.*).

Plaintiff's condition affected her sleep because "I be having crazy thoughts and dreams." (*Id.*). Although she could "not read at all," her condition did not affect her personal-care activities. (*Id.*). She needed reminders to shower and tend to personal hygiene. (*Id.* at PageID.248). She did not cook because "I cannot read the directions . . .

." (*Id.*). Nor did she help with house and yard work. (*Id.*). She went outside "like once a day," and could use the bus. (*Id.* at PageID.249). She did not know how to drive, and she never went shopping. (*Id.*). She could not handle her finances. (*Id.*). She struggled to get along with others "[b]ecause they say [I'm] crazy but the[y're] the ones who are really crazy . . . ." (*Id.* at PageID.250).

Prompted to indicate abilities with which she struggled, Plaintiff marked: memory, completing tasks, understanding, and following instructions. (*Id.*). According to her account, she could pay attention for five minutes, and could not follow any instructions well due to her inability to read or focus. (*Id.*). Her hobbies included watching television and playing with her kids. (*Id.* at PageID.251). She remained able to get along with authority figures even though "I don't like them." (*Id.* at PageID.252). She could not handle stress or changes in routine well: "I cut myself when I stress." (*Id.*). In conclusion, she noted that she did not fill the form out because she could not read. (*Id.* at PageID.220).

### ii.    Plaintiff's Testimony at the Administrative Hearings

At the hearing, Plaintiff opened her testimony by describing her living conditions and personal history. (Doc. 11 at PageID.84). She lived with her mother and two children in a "family flat." (*Id.*). She did not finish high school, leaving after the eleventh grade. (*Id.* at PageID.85). She received food stamps and health insurance through the state, but did not receive other benefits such as unemployment. (*Id.*). She had last worked in August 2015, but left after she "got into an altercation with another employee, and I had gotten fired." (*Id.* at PageID.86). She continued to look for jobs after being fired, but

remained skeptical of her own abilities to do work due to "my reading disability and my depression and bipolar-ness." (*Id.* at PageID.86-87).

Plaintiff remained able to feed, bathe, and play with her two-year-old son. (*Id.* at PageID.89). She watched three to four hours of television a day, but couldn't follow the narratives. (*Id.* at PageID.90). "I don't like people. I like to stay by myself." (*Id.*). When she was going to Work First, she was applying to jobs online there. (*Id.*at PageID.90-91). To get around, she either walked or took public transportation. (*Id.* at PageID.91). She could sometimes dress herself, but other times "I just don't feel like getting dressed, and my mom has to tell me to get up and get dressed[.]" (*Id.*). She could cook noodles, pizza rolls, and chicken for her children, but "that's probably about it." (*Id.* at PageID.92). She could also "sweep the floor, and clean out the bathroom, and clean up my room, and that's about it." (*Id.*). She did no other chores or yard work.

Because "I'll be paranoid at night," Plaintiff did not get much sleep, and napped "probably, like, twice a day." (*Id.* at PageID.93). During her years schooling, Plaintiff received special education, and occasionally involved herself in fights and arguments with those around her. (*Id.* at PageID.94). Since switching to Neurontin and Remeron, she had not had "thoughts of suicide in, like, two or three months." (*Id.* at PageID.96).

### iii.    The VE's Testimony at the Administrative Hearings

The VE, pursuant to prompting from the ALJ, characterized Plaintiff's past jobs as follows: "manicurist—semi-skilled, SVP-3," "sedentary"; and "parking lot signaler— SVP-2, unskilled," and "light." (Doc. 11 at PageID.96). The ALJ then posed his first hypothetical:

8

> Assume that this individual is limited to—has no exertional limitations, but is limited to simple, routine, repetitive work, not at a production rate pace, and without—no tandem tasks; can only have occasional, superficial contact with supervisors, co-workers, and the public; only work that requires simple reading and writing; a low-stress job, meaning only simple work-related decisions and little to no change in the work setting.

(*Id.* at PageID.97). The VE specified that such an individual could not perform Plaintiff's past work, but that other work in the national economy existed, including: "[c]leaner" (56,000 national jobs); "[p]acker" (78,000 national jobs); and "machine feeder" (112,000 national jobs). The ALJ wondered whether an alternative limitation in the same hypothetical to "no contact with the public" would preclude work, and the VE indicated that such a limitation would preclude work as a cleaner, but that packer and machine feeder would remain options, alongside "assembler" with 84,000 national jobs. (*Id.* at PageID.97-98). The ALJ then asked whether an individual consistently off task 20% of the time would be able to find competitive employment, and the VE clarified that such an individual would not be employable. (*Id.* at PageID.98).

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an

impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both   "acceptable"

and non-acceptable sources provide evidence to the Commissioner, often in the form of

opinions "about the nature and severity of an individual's impairment(s), including

symptoms, diagnosis and prognosis, what the individual can still do despite the

impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical

sources" issue such opinions, the regulations deem the statements to be "medical

opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527.

Excluded from the definition of "medical opinions" are various decisions reserved to the

Commissioner, such as whether the claimant meets the statutory definition of disability

and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of

medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at

whether the source examined the claimant, "the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and

specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to

"other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th

Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if

they are "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and are "not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of

11

the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p,

2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—

formerly termed a credibility determination[1]—can be disturbed only for a "compelling

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v.*

*Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at

*2. The ALJ evaluates complaints of disabling pain by confirming that objective medical

evidence of the underlying condition exists. The ALJ then determines whether that

condition could reasonably be expected to produce the alleged pain or whether other

objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p,

2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117

(6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Social Security Administration explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at *1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at *2 ("[W]e are eliminating the use of the term 'credibility from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g., Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p, 2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)   Your daily activities;
(ii)  The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)   Treatment, other than medication, . . . received for relief of . . . pain;
(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence

thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.  Analysis

Plaintiff raises three arguments on appeal: (1) the ALJ failed to support his weight assignment to Dr. Everette on substantial evidence, (Doc. 16 at PageID.408); (2) the ALJ improperly rendered an adverse credibility finding, (*Id.* at PageID.413-416); and (3) in light of new and material evidence previously submitted to the Appeals Council, the Court should remand Plaintiff's case under Sentence Six of 42 U.S.C. § 405(g), (*Id.* at PageID.416-419). I address each argument in turn.

### 1.  Weight Assignment to Dr. Everette's Opinion

Plaintiff broadly argues that the ALJ erred in his consideration of Dr. Everette's opinion. In particular, she suggests the ALJ committed reversible error in placing "any reliance" on IQ scores from November 2002, which the ALJ used "as a basis to discredit" Dr. Everette's more "recent testing." (Doc. 16 at PageID.408). Plaintiff also decries the other reasons supplied in the ALJ's rationale as unsound, including the lack of a treating relationship between Dr. Everette and Plaintiff, Dr. Everette's declination to comment on the "validity of the IQ testing" performed, and Dr. Everette's commentary on issues

14

vocational in nature. (*Id.* at PageID.410). On remand, Plaintiff contends that new regulations would require the SSA to acquire medical expert testimony in considering the validity of IQ testing. (*Id.* at PageID.412-413) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(H)(2)(d) (2017)).

At the time the ALJ issued her decision, a claimant who sought to prove she suffered an intellectual disorder under Listing 12.05, needed to show:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Effective May 24, 2016 to Sept. 28, 2016). Further, the evidence would need to demonstrate "onset of the impairment before age 22." *Id.*

Plaintiff's argument cannot prevail because she failed to furnish a demonstrably valid IQ score of 59 or less.[2] As the ALJ noted, the IQ testing performed by Dr.

---

[2] Although the Listing at issue provides four alternative methods of satisfying its criteria, Plaintiff only argues that she fulfills paragraph B. As such, I only address whether substantial evidence fulfills paragraph B of Listing 12.05. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (undeveloped arguments are waived).

Czarnecki and Dr. Boneff, which showed a full-scale IQ of 53, was "unreliable and likely invalid," given the patient's inconsistent performance and seeming uncooperativeness." (Doc. 11 at PageID.46, 332). In addition, Dr. Everette's estimation that Plaintiff had a "full scale IQ of <40", (*Id.* at PageID.343), contained no estimation as to its validity and contained inconsistencies with the remainder of the record, including Plaintiff's prior, November 2002 IQ scores. *E.g.*, (*Id.* at PageID.331) (describing Plaintiff as "in touch with reality," "irritable, apathetic, indifferent, and seem[ing] to put forth little effort" on testing); (*Id.* at PageID.353, 358) (demonstrating good judgment, alertness, and/or normal stream of mental activity) *See generally* (*Id.* at PageID.335-344). To this, Plaintiff suggests that any comparison to her prior IQ scores undermines the ALJ's rationale, as such scores are outdated. But in fact, when considering Listing 12.05, "childhood IQ scores are specifically relevant in determining whether [one has] subaverage intellectual functioning before the age of 22." *Crittendon v. Colvin*, No. CV 15-13845, 2016 WL 8261933, at *5 (E.D. Mich. Nov. 17, 2016), *R. & R. adopted,* No. 15-13845, 2017 WL 661066 (E.D. Mich. Feb. 17, 2017) (citing *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460-61 & n.2 (6th Cir. 2012)).

The ALJ was also permitted to weigh the absence of a significant treating relationship with Plaintiff against Dr. Everette's findings; doing so did not militate against her simultaneous reliance on state agency physicians' findings, which the ALJ reasonably found to be more consistent with the record evidence. *Accord, e.g.*, SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and

psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Nor was the ALJ required to accept Dr. Everette's conclusory finding that Plaintiff could find no employment, as such an opinion is reserved for the Commissioner. *E.g.*, *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008) ("It is well-settled that the ultimate issue of disability is reserved to the Commissioner."); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (reiterating this point).

For these reasons, Plaintiff's argument as to Dr. Everette should fail.

## 2. Credibility Finding

Plaintiff next avers the ALJ furnished insufficient reason to discount her credibility. The ALJ noted, for instance, that Plaintiff failed to seek treatment for her condition, but Plaintiff observes that learning disabilities remain unreceptive to "traditional" forms of mental-health treatment, and the record itself "is actually silent regarding [Plaintiff's continued treatment following the last . . . progress notes of record from Gateway – Detroit East from March 2015." (Doc. 16 at PageID.415). Plaintiff also supposes that although Plaintiff sought work through Work First, "it is apparent that ultimately, [she] was determined to lack the intellectual ability to sustain employment as confirmed" Dr. Everette's vocational commentary and recent testing. (*Id.* at PageID.415-416).

On review, the ALJ's rationale as to Plaintiff's credibility should be upheld as it is supported by substantial evidence. The ALJ did not, as Plaintiff contends, fault her for failure to treat her learning disabilities; rather he merely noted that "[t]he record reflects no significant longitudinal treatment history for more than a year, from March 30, 2015,

through the date of this decision." (Doc. 11 at PageID.52). The clear implication is that Plaintiff did not seek treatment for those conditions which were *amenable* to treatment— *i.e.*, her alleged depression and bipolar disorder—and she supplied no excuse therefor. (*Id.* at PageID.345); *see* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual *may provide* or other information *in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment."); *see also Coleman v. Comm'r of Soc. Sec.*, No. CIV.A. 12-10809, 2013 WL 1316913, at *10 (E.D. Mich. Feb. 27, 2013), *R. & R. adopted*, No. 12-CV-10809, 2013 WL 1316953 (E.D. Mich. Mar. 29, 2013) (finding "the ALJ permissibly discounted Plaintiff's allegations by noting gaps in his psychological treatment history"); *Smith v. Comm'r of Soc. Sec.*, No. 08-15317, 2010 WL 1254850, at *4 (E.D. Mich. Jan. 5, 2010), *R. & R. adopted*, No. 08-15317, 2010 WL 1254848 (E.D. Mich. Mar. 26, 2010) (finding the ALJ held no duty to independently speculate on the reasons driving gaps in a claimant's treatment").

Indeed, when she did seek treatment, her condition improved markedly, as the ALJ astutely observed. *E.g.*, (Doc. 11 at PageID.353). The ALJ also fairly weighed Plaintiff's attendance at Work First against her credibility, as someone who is disabled should theoretically not be holding herself out to private employers as capable of sustained, full-time work. *Cf. Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently

inconsistent."). That Dr. Everette considered Plaintiff unemployable, as explained above, does not mitigate the impact these factors may be considered to have on Plaintiff's credibility. *E.g.*, *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008).

### 3.     Sentence Six Remand

In her final argument, Plaintiff seeks the admission of a "detailed explanation" Dr. Everette penned regarding his use of the Reynolds Intellectual Assessment Scales ("RIAS") in testing Plaintiff via remand under Sentence Six of 42 U.S.C. § 405(g). (Doc. 16 at PageID.417) (citing Doc. 11 at PageID.58-78). She supposes the evidence is "new" because "it was not before the ALJ when he issued his decision in this case on May 27, 2016, that it is material because it "rebuts" the notion that Dr. Everette failed to assess the validity of Plaintiff's IQ testing, and that there was good cause for its previous absence because "the undersigned counsel had no way of knowing that the ALJ would question the validity of Dr. Everette's IQ testing results as evidenced by the fact that counsel submitted two letters to the ALJ seeking a favorable, on the record decis[io]n, based on these results." (*Id.* at PageID.418-419). Plaintiff's argument, however, does not agree with the actual standard a claimant must meet to attain a Sentence Six remand.

Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Evidence is new only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is material only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

The evidence Plaintiff seeks to introduce is not new because it could have been acquired earlier and included in the record before the ALJ. Moreover, the fact that Plaintiff's counsel failed to anticipate the need for this evidence is not "good cause" for omitting it the first time around. *See, e.g.*, *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996) (refusing to remand under sentence six because "[c]ounsel had an entire month to" acquire and submit new evidence but "elected to wait and submit [it] to the Appeals Council for the first time"); *Jackson v. Comm'r of Soc. Sec.*, 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009) ("Mistakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six."). Accordingly, the evidence at issue does not warrant a Sentence Six remand.

### H.     Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 10, 2018                    S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 10, 2018                     By s/Kristen Castaneda
                                        Case Manager